**FEDERAL RESERVE BANK OF NEW YORK, Plaintiff,**

v.

**Gordon WILLIAMS, Husband & Morris, Leonard H.W. van Sandick, and Loeff and Van der Ploeg, Defendants.**

**No. 88 Civ. 1414 (JMW).**

United States District Court, S.D. New York.

Jan. 6, 1989.

Ernest T. Patrikis, Gen. Counsel, Federal Reserve by Thomas C. Baxter, Jr., New York City, Michael F. Hertz, Joan E. Hartman, U.S. Dept. of Justice, Civil Div., Washington, D.C., for Federal Reserve Bank of New York.

Geoffry D.C. Best, LeBoeuf, Lamb, Leiby & MacRae, New York City, for Leonard H.W. van Sandick, and Loeff and Van der Ploeg.

Michael R. Morris, Los Angeles, Cal., for defendant Husband and Morris.

F. Timothy McNamara, Hartford, Conn., James F. Campise, Marcigliano and Campise, New York City, for intervenor, Kaveh K. Showrai, a/k/a Gordon F. Campise.

## MEMORANDUM AND ORDER

### WALKER, District Judge:

Plaintiff, Federal Reserve Bank of New York (the "Fed"), pursuant to Rule 41(a)(2) Fed.R. of Civ.P. moves to dismiss its claim in interpleader and to recover funds that have been paid into the registry of this court. The Fed commenced this action in March 1988 by filing an Interpleader Complaint pursuant to Rule 22 Fed.R.Civ.P. against defendants Gordon Williams, Husband & Morris, Leonard H.W. van Sandick, and Loeff and Van der Ploeg to determine entitlement to the proceeds of an award issued by the Iran–United States Claims Tribunal ("Tribunal") to a Mr. Gordon Williams, the proceeds of which had been transferred to the Fed for distribution. The Fed, uncertain as to the proper recipient of the funds, proceeded by way of interpleader in order to "(a) avoid exposure to double or multiple liability; and (b) to foster the interests of justice." Complaint, ¶ 6. On March 1, 1988, the late Judge Daronco ordered the $297,157.94 stake to be deposited into the Court's registry where it was placed in a money management account at Manufacturers Hanover Trust Company.

Thereafter, the Fed conducted an investigation which revealed new facts concerning Gordon Williams. Although the Fed originally believed that interpleader was an appropriate remedy in view of the apparently conflicting claims to the fund, the Fed now asserts, based on its investigation, that (1) there are no adverse claims to the stake which is the subject of this action, and (2) that the sole putative claimant is patently not entitled to the funds as awarded by the Tribunal and that, thus, this action should be dismissed and the stake returned to the Fed. The Fed's request for an order that the Clerk pay the interpleader stake, with interest accrued thereon, to it is joined in by its principal, the government of the United States. The sole claimant, Mr. Kaveh Karl Showrai ("Showrai") has also moved, pursuant to F.R.Civ.P. Rule 24, to intervene for the purpose of filing his claim against the fund.

In light of the facts now presented by the Fed that are not in dispute, the Court grants the Fed's motion to dismiss and orders that the stake be returned to it for redeposit at the bank from which the funds

were originally disbursed. In view of this order, the Court dismisses Showrai's motion as moot.

## I. *Facts*

### A. *The Tribunal*

The Tribunal was a body established by the January 19, 1981 Algiers Accords, the international agreement which secured the release of Americans held hostage in the Islamic Republic of Iran for 444 days during 1979–1981. It was designed to hear, determine and make awards on claims against the signatory nations by each other and their nationals.[1] The Tribunal's jurisdiction includes (1) claims of the United States nationals against the Government of Iran; (2) claims of Iranian nationals against the Government of the United States; and (3) claims by the two governments against each other arising out of contractual arrangements for the purchase and sale of goods and services. Claims Declaration at Article II, § 1. *See also Dames and Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981).

The Claims Declaration authorized the Banque Centrale d' Algerie, as an escrow agent, to instruct N.V. Settlement Bank of Netherlands ("Settlement Bank"), the holder of the fund established to pay the Tribunal's awards, to make payments to the Fed, as a fiscal agent of the United States, as necessary for the execution of arbitration awards in favor of United States claimants.

### B. *The Williams Award*

On December 18, 1987, the Tribunal filed an award in the case of *Gordon Williams v. Islamic Republic of Iran*, AWD No. 342–187–3, slip op. (Iran–United States Tribunal December 18, 1987) (the "Award"). In the Award, the Tribunal determined, in part, that claimant Gordon Williams was entitled to $167,521.00 plus simple interest "up to and including the date on which the Escrow Agent instructs the Depositary Bank [the Settlement Bank] to effect payment out of the Security Account ... [which was] established pursuant to paragraph 7 of the Declaration of the Government of the Democratic and Popular Republic of Algeria on 19 January 1981." Williams Award, p. 26–7. On February 25, 1988, the Fed received $301,537.80 from Settlement Bank and deducted 1.5% pursuant to § 502 of the Foreign Relations Authorization Act, Fiscal years 1986 and 1987, 50 U.S.C. § 1701 note, leaving a balance of $297,014.73 to be paid "to 'the Claimant[ ] designated by the award[ ] as recipient[ ],' namely, Gordon Williams." Plaintiff's Memorandum of Law at 4.

While the Fed's duty with respect to Tribunal awards is ordinarily ministerial, the Award was extraordinary because the Fed received several conflicting payment directions from a person purporting to be Gordon Williams and others purporting to represent Gordon Williams. *See* Complaint, Exhibits A–F. These directions can be summarized as follows:

1. A direction, dated 1/4/87, from Husband & Morris, a law firm purportedly acting on behalf of Williams, to the Fed to issue a check to Williams to be delivered to Husband & Morris.

2. A direction, dated 12/29/87, also from Husband & Morris, on behalf of Williams, that the Award be paid directly into an account at the BancOhio National Bank in Johnstown, Ohio.

3. A direction, dated 1/25/88, purportedly from Williams himself, that the Award be paid to Husband & Morris.

4. An instruction, dated 2/6/88 also purportedly from Williams, revoking all prior assignments and authorizations, including the one dated 1/25/88, and authorizing Loeff and Van der Ploeg, through its partner Mr. van Sandick, to receive the award.

5. An instruction, dated 2/19/88, from Husband & Morris, claiming that the

---

**1.** The Agreement was embodied in two declarations of the Democratic and Popular Republic of Algeria, the second of which—the Declaration of the Government of the Democratic and Popular Republic of Algeria Concerning the Settlement of Claims by the Government of the United States of America and the Government of the Islamic Republic of Iran, Jan. 19, 1981—established the Tribunal. *Reprinted in Dept St. Bull.*, Vol. 81, Issue 2047 (Feb.1981) 3–4 ("Claims Declaration").

2/6/88 revocation of authorization was unauthorized.

6. An instruction, dated 2/22/88 from the law firm of LeBoeuf, Lamb, Leiby and MacRae, on behalf of Loeff and Van der Ploeg, claiming Loeff's and Van der Ploeg's entitlement to the funds and suggesting that the letters signed by Williams were forgeries.

Complaint ¶¶ 12–17.

## II. *The Investigation of Claimants*

In an effort to determine to whom the award should be paid by the Fed, Donald Bridges, Jr., an Enforcement Investigations Analyst with the U.S. Department of the Treasury's Office of Foreign Assets Control, conducted an investigation. The results of the investigation, which are substantially undisputed, lead the Court to conclude that there are no valid claimants for the Award and that the Fed's motion to dismiss and for the return of the funds should be granted. Bridges determined that the Gordon Williams, whose birth certificate was submitted to the Tribunal to satisfy the Tribunal's jurisdictional requirements, died in 1982 and was never a party to the claim before the Tribunal. Affidavit of Donald Bridges ¶¶ 6–11.

Showrai submitted an affidavit setting forth his knowledge of the events. Showrai[2] used the alias "Gordon Williams," a name derived from the first names of two of his American friends, to set up a business entity called "K & S Irrigation Company" in Ohio. In March, 1979, Showrai commenced a scheme to syphon his own money from Iran. He would sell irrigation equipment to his family farm in Iran at highly inflated prices, using the letterheads of Gordon Williams and K & S Irrigation, in order to recover some of his own money from Iran. There were two such transactions, the second of which underlies the claim that resulted in the issuance of the award at issue in this case. Showrai claims not to know the whereabouts of the goods "sold" in this second transaction.

The funds used to pay for the equipment came from Keyhan Corporation, Showrai's general contracting company in Iran. Showrai authorized his stepbrother in Iran, Shahrokh Ordoubadi ("Ordoubadi"), to take moneys from Keyhan and deposit them in Iranian banks to obtain two letters of credit. Ordoubadi, using an import-export license of a friend, Tabrizi, required by the Government of Iran for foreign trade related transactions, opened the two letters of credit, each in the amount of $167,521.

The banks in the United States refused to honor the letters of credit after President Carter had ordered a freeze on all Iranian funds and assets. Showrai therefore entrusted Ordoubadi to facilitate collection of the money in Iran and have it forwarded to him through a European Bank. Showrai claims that he never received the money and that Ordoubadi withdrew the money from the Iranian banks and used it for his personal gain.

Showrai, through a French Attorney, then tried to file a claim with the Tribunal to recover all of his Iranian assets which totaled about $24 million and included the two letters of credit that had been issued to K & S Irrigation. Showrai suffered a heart attack in January 1982, and his attorney missed the filing deadline for claims with the Tribunal. This, he believed, was the end of his claim before the Tribunal.

However, later in 1982, Showrai received documents from the Tribunal, addressed to the K & S business address in Ohio, regarding a claim that had been filed before the Tribunal. Apparently, a second claim for the letters of credit had been filed in the name of Gordon Williams prior to the Tribunal's filing deadline. Ordoubadi told Showrai that he had filed the claim using the name Gordon Williams, but that the claim had been dismissed because Ordoubadi lacked the funds to hire a lawyer.

Showrai received no further word from the Tribunal until December, 1987, when notice of the Award was received at the K

**2.** Showrai was, an Iranian National lawfully in the United States. He became a United States Citizen on December 11, 1986.

& S business address in Ohio, in December 1987. Showrai states that in January, 1987, he learned by accident that the claim was still alive and that Leonard van Sandick, a Dutch attorney, was representing K & S Irrigation in the matter. Showrai then wrote the Tribunal that Husband and Morris was the proper representor, not van Sandick.

Showrai believes that Ordoubadi changed the address of K & S Irrigation to a California address, and then received correspondence at this new address through his Dutch attorney, van Sandick. Showrai's version, as set forth in his affidavits, is substantiated by several other sources. *See* Bridges Affidavit ¶¶ 46–52; Affidavit of William Ashbrook, Exhibit M, Bridges Affidavit. *See also* Showrai's affidavits, found in Showrai's Motion to Intervene ("Showrai Affidavit 1") and in Appendix P of Bridges Affidavit ("Showrai Affidavit 2").

Ordoubadi, who is not a party to this action, also submitted an affidavit. His version is somewhat different from Showrai's version. Ordoubadi claims that Showrai introduced him to an individual named Gordon Williams, who was the owner of a K & S Irrigation Company. In Ordoubadi's trips to Iran he allegedly did business for Gordon Williams, through Showrai. Ordoubadi's description of the business transactions accords with Showrai's, except he says he put up $80,000 to pay a middleman his "20% mark up" for the deal. He asserts that the second shipment never arrived, so he concludes that he paid a penalty for backing out of the deal, cancelled the two letters of credit for $167,521 and retrieved the money that remained from two Iranian banks. Ordoubadi alleges that both Gordon Williams and Showrai used the documents from the second transaction

to file claims with the Tribunal, and that he never filed a claim with the Tribunal.

### III. *Discussion*

Under Article VII, Section 2 of the Claims Declaration, the Tribunal only has subject matter jurisdiction of claims by nationals of the United States that are owned continuously from the date the claim arose until the date on which the Agreement became effective, January 19, 1981.[3] If the United States claimant was not a United States national during that entire period then subject matter jurisdiction is lacking. *See also In Re Refusal to File Claim of Abdol Hamia Jahani*, Refusal Case No. 16, (June 14, 1982), *reprinted in* 1 Iran–United States Claims Tribunal Reports 168 (1982) ("By his own admission the Claimant is an alien resident in the United States of America and not a national of that State. This claim therefore falls outside the jurisdiction of the Tribunal ..."); *Mobasser v. Iran*, Award No. 219–947–2 (March 20, 1986), *reprinted in* 10 Iran–United States Claims Tribunal Reports 177 (1986) ("The Claimant has alleged that he became a citizen of the United States ... subsequent to 19 January 1982.... Therefore, the Tribunal holds that it lacks jurisdiction over this Claim"). It is with these principles in mind that this Court considers the claims to the award herein.

### A. *Showrai's Claim*

The plain language of the Claims Declaration mandates the conclusion that Showrai does not have a valid claim for the proceeds of the Award in this case. It is irrelevant that Showrai himself, or someone on behalf of Showrai, assumed the name of Gordon Williams. Gordon Williams had no claim and Showrai was not a United States Citizen when the subject claim arose or was filed, and did not be-

---

**3.** Article VII, § 2 of the Claims Declaration provides: "Claims of nationals of Iran or the United States ... means claims owned continuously from the date on which the claim arose to the date on which the Agreement enters into force by nationals of that state ..."

Article VII, § 1 of the Claims Declaration provides that for the purposes of the agreement, "'national' of Iran or of the United States, as the

case may be, means (a) a natural person who is a citizen of Iran or the United States; and (b) a corporation or other legal entity which is organized under the laws of Iran or the United States ... if, collectively, natural persons who are citizens of such a country hold, directly or indirectly, an interest in such corporation or entity equivalent to fifty percent or more of its capital stock."

come one until December 11, 1986. Showrai's Affidavit No. 1 at 2. Thus, the Tribunal does not have subject matter jurisdiction over Showrai's claim.[4]

Showrai argues that he is entitled to the Award on behalf of his daughter, Atiyeh, who is an American Citizen.[5] Atiyeh allegedly owned 25 percent of the stock of Keyhan Corporation, an Iranian Company whose funds allegedly were used to fund the letters of credit that form the foundation for the award made. This argument is without merit because the Tribunal never processed a claim for Atiyeh Showrai. Showrai does allege that he filed a claim with the Tribunal on behalf of his family, which included the two letters of credit at issue here. However, Showrai admits that this claim was dismissed because it was not submitted prior to the January 19, 1982 deadline. Showrai's Affidavit No. 2; Exhibit P, Bridges Affidavit.

While the Tribunal determined that Gordon Williams was entitled to an award, it did so in the apparent belief that Gordon Williams in fact existed and was an American Citizen. It appears not to have been aware that Gordon Williams was dead and that his name was an alias for either Showrai or Ordoubadi neither of whom were United States citizens when the claim arose, if it did arise, and was filed. In granting the Fed's motion, the Court need not evaluate the Award, or the Tribunal's decision. The only issue properly before the Court is whether the Tribunal's award can be paid by the Fed. If Showrai wants the award modified so that he may be paid, which appears to be his argument, then the appropriate course is for him to make that application to the Tribunal.

B. *The Attorneys' Claims*

Defendants Leonard H.W. van Sandick and Loeff and Van der Ploegg have stated that their "claim to the award funds is thus in the nature of an attorney's lien" for their work done on behalf of Gordon Williams. Memorandum of Defendant's Leonard H.W. van Sandick and Loeff & Van der Ploeg in Response to Motion to Dismiss at 2. They take the position that should the Court award the funds to Gordon Williams, they would assert an attorney's lien against the awards fund. On the other hand, "if the Fed's motion is granted, and the award proceeds returned to the Fed with directions that they be returned to the N.V. Settlement Bank of the Netherlands from which they came, ... [they] would not assert any claim against those funds." *Id.* at 3. Thus, in light of this Court's decision to grant the Fed's motion, defendants Leonard H.W. van Sandick and Loeff and Van der Ploegg no longer assert claims against the fund.

Defendant Husband & Morris, in their Answer to the Interpleader Complaint, explicitly state that "neither HUSBAND & MORRIS nor any partner thereof makes any claim of any nature whatsoever to the entirety and/or any part of the sums of money described in the Complaint in Interpleader, individually or collectively. The action of HUSBAND & MORRIS with respect to this matter was in a representative role on behalf of our client, KAVEH K. SHOWRAI, aka Gordon Williams". Answer to Interpleader at p. 4. Thus, Husband and Morris have no present claim against the fund.

Accordingly, the Fed is without a proper claimant to whom the award may be delivered. Interpleader is no longer appropriate because there are no valid parties competing for the stake. The only party laying claim to the stake is Showrai but, as noted, he presents no valid claim. Therefore, plaintiff's motion to dismiss the interpleader complaint is granted.

IV. *Conclusion*

The Court grants plaintiff's motion to dismiss and directs the Clerk of this Court to pay the stake with accrued interest to

---

4. The Court notes that because there is no evidence that K & S Irrigation Company was at the relevant time owned by United States citizens, K & S Irrigation Company cannot qualify as the requisite United States national, but is simply another *alter ego* of Showrai. Bridges Affidavit at ¶¶ 15–33, 41.

5. Atiyeh was born in Portland, Oregon, on September 11, 1962.

**54**

the Fed for return to the claims fund at the N.V. Settlement Bank. Based upon this decision, Mr. Showrai's motion to intervene is dismissed as moot.

SO ORDERED.